IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE MORALES-TORRES,<br><br>Defendant. | CRIMINAL NO. 14-251 (GAG) |

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

On April 9, 2014, a federal Grand Jury returned a two count Indictment against defendant José Morales-Torres ("Defendant Morales") for possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1) & (b)(1)(B)(ii)(II) and for possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924 (c). (Docket No. 12).

On December 3, 2015, Defendant Morales filed a "Motion to Suppress" moving the court to suppress all items seized during the warrantless search conducted on March 16, 2014 of his person and the Chevrolet Equinox (PR license IEU-319) he was driving, any statement written or otherwise that he made to the PRPD officers and any evidence derived from the illegal search and arrest as fruit of the poisonous tree.  In essence, Defendant Morales posits that the officers did not have reasonable suspicion to conduct the stop and, even if they did, the traffic stop turned into a detention that exceeded the parameters of Terry v. Ohio, 392 U.S. 1 (1968). (Docket No. 69).

United States v. Morales-Torres
Criminal No. 14-251 (GAG)
Report and Recommendation
Page 2

On November 14, 2016, the Motion to Suppress was referred to the undersigned for a hearing and report and recommendation. (Docket Nos. 90 and 91).

On December 7, 2016, the government filed its "Response in Opposition to Defendant's Motion to Suppress" submitting the Motion to Suppress should be denied on several grounds. First, the government argues that Defendant lacks standing to challenge the search of the vehicle or the objects seized because Defendant claimed not to be the owner of the Chevrolet Equinox at the time of his arrest and he is not the registered owner of said vehicle. Thus, Defendant has not shown that he had a possessory interest and an expectation of privacy in the vehicle. Second, the government asserts that, if Defendant can prove standing, the stop of the vehicle was reasonable. Third, the warrantless search was legal inasmuch as it was based on a consent to search by Defendant. Finally, the inventory search was lawful. (Docket No. 74).

After granting several continuances, the suppression hearing was held on February 10, 2017 as to the issue of standing only. Defendant Morales testified on his own behalf after being advised of his rights. Direct and cross-examination were conducted. The Court advised Defendant that the matter of standing was thin as no details were provided in order to convince the Court as to an expectation of privacy of Defendant in the vehicle. Defense counsel requested one (1) week to obtain additional evidence to support Defendant's standing. (Docket No. 103).

On February 15, 2017, Defendant Morales submitted an "Informative Motion" attaching two (2) traffic tickets dated December 21, 2013 in support of his claim that he has standing to raise the suppression issue. (Docket No. 100).

On the same day, the Government filed its "Response to Defendant's Informative Motion at Docket No. 100" averring that the two (2) traffic tickets submitted by Defendant in Docket No. 100 in no way support or corroborate his testimony and his attempt to establish an expectation of privacy in the vehicle and standing to challenge the search and seizure. (Docket No. 101).

On February 17, 2017, an Order was issued for Defendant Morales to inform by February 24, 2017 whether the matter of standing was submitted with the documents attached to Docket No. 100 or whether he was going to present additional documentary or testimonial evidence as to the issue of standing. (Docket No. 102).

On February 21, 2017, the Court ordered both parties to file some translations into English which were not originally filed with Docket Nos. 94 and 100. (Docket No. 104). On the same day, the Government filed the translations in compliance with the Court's Order. (Docket No. 105). Defendant also complied. (Docket No. 108).

On March 3, 2017, an Order was issued because Defendant failed to comply with the Order at Docket No. 102 and he was granted until March 10, 2017 to comply with said Order. Defendant was admonished that failure to comply would be understood as Defendant having no additional evidence to present as to the standing issue and that the matter would be deemed submitted. (Docket No. 107).

Defendant did not comply with the Orders at Docket Nos. 102 and 107. As such, the standing issue is deemed submitted.

**LEGAL DISCUSSION**

The Government claims Defendant Morales does not have standing to challenge the admission of the evidence seized from the Chevrolet Equinox and any other evidence derived there from. In essence, the Government avers Defendant is not the registered owner of said vehicle nor has provided evidence that he was an authorized driver, thus, he lacks standing to claim a violation of his rights.

Defendant Morales took the stand as to the standing issue after being advised of his rights and the risks involved in testifying. Defendant did not present any other evidence, to challenge the admissibility of the seized evidence, besides his testimony.

After hearing the testimony of Defendant Morales and the two (2) traffic tickets provided in support thereof, the Court finds that Defendant Morales does not have standing to challenge the admissibility of the evidence seized via a motion to suppress. Defendant Morales did not meet his burden of proving he had a legitimate expectation of privacy in the vehicle and in relation to the items seized.

The concept of standing under the Fourth Amendment refers to the defendant's burden of proving a legitimate expectation of privacy as a prerequisite to challenge unlawful police conduct. United States v. Sánchez, 943 F.2d 110, 113 n. 1 (1st Cir. 1991). "We therefore use the term 'standing' somewhat imprecisely to refer to this threshold substantive determination." *Id.* *See* United States v. Cruz Jiménez, 894 F.2d 1, 5 n. 1 (1st Cir. 1990).

The term "standing" is also used as a shorthand method of referring to the issue of whether the defendant's own Fourth Amendment interests were implicated by the challenged Governmental action. "Technically, the concept of 'standing' has not had a

place in Fourth Amendment jurisprudence for more than a decade, since the Supreme Court in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421 (1978), indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law." *See* Sánchez, 943 F.2d at 113 n. 1; *see also* United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994).

A defendant has the burden of establishing standing. Rakas, 493 U.S. at 138-48; United States v. Melucci, 888 F.2d 200, 201 (1st Cir. 1989); United States v. Hershenow, 680 F.2d 847, 855 (1st Cir. 1982). Defendant's burden of showing that he had reasonable expectation of privacy in the area searched and in relation to the items seized in order to establish standing for suppression challenge must be carried at the time of the pretrial hearing and on the record compiled at that hearing. United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988); *and see* United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993) (before embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized).

The First Circuit has identified the sort of factors which are pertinent to this threshold inquiry, to wit: ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case. Aguirre, 839 F.2d at 857; *see, e.g.*, United States v. Gómez, 770 F.2d 251, 254 (1st

Cir. 1985); United States v. Lochan, 674 F.2d 960, 965 (1st Cir. 1982).[2]  The Court looks to whether or not the individual thought of the place (or the article) as a private one, and treated it as such. If the movant satisfies the Court on this score, then the Court looks to whether or not the individual's expectation of confidentiality was justifiable under the attendant circumstances. Whatever facts may shed light upon either step of this two-tier inquiry may be weighed in the balance.  Aguirre, 839 F.2d at 857.

While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, United States v. Salvucci, 448 U.S. 83, 91, 100 S.Ct. 2547, 2553 (1980), ownership alone is not dispositive. Rawlings v. Kentucky, 448 U.S. 98, 105, 100 S.Ct. 2556, 2561-62 (1980).  Courts must look to the totality of the circumstances, and "any precautions taken to exclude others or otherwise maintain a privacy interest will heighten the legitimate expectation of privacy in the protected area." United States v. One 1977 Mercedes Benz, 708 F.2d 444, 449 (9th Cir. 1983).

Defendant Morales testified at the suppression hearing as to the standing issue.[3] No other evidence was adduced by Defendant in support thereof.  Based on Defendant Morales' testimony, the Court concludes that Defendant has failed to meet his burden that he had an expectation of privacy in the Chevrolet Equinox vehicle.  Thus, Defendant

---

[2] The factors that a court must take into account prior to deciding whether the defendant requesting the suppression had the expectation of privacy that grants him/her the standing to request the suppression include: 1) legitimate presence in the area searched; 2) prior use of the area searched or the property seized; 3) possession or ownership of the area searched or the property seized; 4) ability to control or exclude other's use of the property; and 5) a subjective expectation of privacy. Lochan, 674 F.2d at 965.

[3] One should not lose sight of the fact that "it has been well settled for over twenty years that testimony given to meet standing requirements cannot be used as direct evidence against the defendant at trial on the question of guilt or innocence." United States v. García-Rosa, 876 F.2d 209, 219 (1st Cir. 1989) (citing Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 974 (1968)).

Morales does not have standing to challenge the admission of illegal items seized under the totality of the circumstances and the evidence before the Court. Moreover, Defendant's expectation of confidentiality was not justifiable under the attendant circumstances. Accordingly, Defendant Morales has not met the threshold established in Aguirre and Lochan.

Defendant Morales succinctly testified on direct examination that on March 16, 2014, he had owned a Chevrolet Equinox for four (4) to five (5) months. Defendant Morales averred that he bought the vehicle from "a lady." Defendant Morales bought the account for the vehicle and he paid "the lady" $4,000.00 in cash. Defendant Morales indicated that, in his mind, the vehicle was his and he had control of the vehicle as its owner. Defendant Morales testified the vehicle was not registered under his name. Defendant also asserted that he had an expectation of privacy in the vehicle.

On cross-examination, Defendant Morales admitted that, on the day of his arrest, he did not have the vehicle's registration with him because it was at his house. Defendant Morales stated that he bought the vehicle from "a lady" that he did not recall her name through a classified advertisement online. Defendant did not call the number on the advertisement because a friend of his, by the name of Carlos (last name unknown), made the telephone call. After said call, Defendant got in contact with the "lady" and he bought the vehicle after he saw it. Defendant met the "lady" once at the parking of a shopping mall in Trujillo Alto. Defendant did not know the name of the shopping mall. Defendant was taken to the shopping mall by his brother. However, Defendant was alone when he bought the vehicle. Defendant paid "the lady" $4,000.00 in cash and he left in the vehicle. Defendant was given a receipt that Defendant did not have at the hearing because he

misplaced it after his arrest. "The lady" gave Defendant other papers of the vehicle but he did not have those documents at the hearing either. Defendant does not know the name of "the lady" but described her as tall, white skin and black hair. Defendant indicated he used the vehicle every day from that day on. Defendant also had a Toyota Highlander at the time of his arrest, which was not registered under his name, because he bought the account.

    Defendant Morales testified that he paid $4,000.00 in cash as a down payment and made additional monthly payments for the Chevrolet Equinox through "the lady" and then decided to keep the vehicle. As such, Defendant assumed the balance of the account of the vehicle at a banking institution. Defendant would make the payments to "the lady" in person first, and after that, to First Bank. Defendant only saw "the lady" twice, that is, when he paid her the $4,000.00 and when he later made one (1) installment. A friend of Defendant would make the payments at the bank in cash. Defendant has no evidence to support any of the payments he made in cash for the vehicle at the bank.

    Defendant clarified that, at the time of his arrest, he was asked whether the vehicle was under his name and he said "no" because the vehicle was not registered under his name. It was an account. Defendant did not tell the arresting officers that the vehicle belonged to his cousin. Defendant further stated that "the lady" was like an aunt and Carlos introduced her to him. Defendant averred he could not get the contact information of "the lady" because he only had contact with his family. Defendant stated that his family could not get in contact with Carlos either.

    Defendant testified on re-direct examination that he has been in prison for almost three (3) years after his arrest. Defendant spent ten (10) months at a prison in Georgia

<u>United States v. Morales-Torres</u>
Criminal No. 14-251 (GAG)
Report and Recommendation
Page 9

because he was transferred there from MDC Guaynabo. Thus, Defendant has no control over his documents.

To questions of the undersigned, Defendant stated that he paid $4,000.00 in cash as a down payment for the vehicle and assumed a debt of about $28,000.00 with the bank. Approximately, thirty (30) payments to the bank were pending to be made. Defendant admitted that he agreed to pay $32,000.00 total for the vehicle. Defendant does not have a bank account number nor any payment stubs from the bank nor any bank statements.

After the suppression hearing, Defendant submitted two (2) traffic tickets issued on December 21, 2013 in Vieques, Puerto Rico for the Chevrolet Equinox for violations of the PR Traffic Laws. (Docket No. 100).

Defendant bases his alleged standing to challenge the admissibility of the illegal evidence exclusively on his testimony and his own word. Even though Defendant was granted by the Court several opportunities to do so, Defendant did not bring any additional evidence to corroborate his scant version of facts as to how he allegedly bought the vehicle, his alleged control of the vehicle and his expectation of privacy in the same. Defendant's testimony lacked specificity in almost every respect. For example:

- Defendant does not recall the name of "the lady" from which he "bought" the vehicle.
- Defendant does not have the contact information of "the lady" and his family cannot get in contact with her even though he considers her like an "aunt."
- Defendant does not have any documents to evince the purchase of the vehicle.
- Defendant does not have the vehicle's registration.

- The vehicle is not registered under Defendant's name at the Department of Transportation and Public Works.

- Defendant does not have the receipt he was provided by "the lady" when he made the $4,000.00 cash down payment to her.

- Defendant does not have any evidence, receipts or payment stubs of the cash payments he made for the vehicle at the bank.

- Defendant did not make the additional payments at the bank himself. A friend of Defendant named Carlos (last name unknown) made the payments at the bank for Defendant.

- Defendant does not have any evidence or bank statements for the vehicle's bank account.

- Defendant does not have the bank account number.

- Defendant did not present the testimony of Carlos LNU at the suppression hearing.

- Defendant did not present the testimony of "the lady" at the hearing.

- Defendant did not present the testimony of anyone else to support his claims of ownership, historical use and control of the vehicle such as a family member, a friend, a co-worker, a neighbor, among others.

- Defendant did not present evidence of any maintenance given to the vehicle.

- Defendant did not present any evidence of improvements made to the vehicle.

- Defendant did not present any evidence of having purchased a vehicle tag or "marbete" for the vehicle.

- Defendant "owned" another vehicle (a Toyota Highlander) at the time of his arrest. This militates against Defendant's testimony that he was the only person in control of the Chevrolet Equinox vehicle and that he used the same on a daily basis.
- Defendant did not present evidence as to the origin of the $4,000.00 in cash he used to make the down payment for the vehicle.
- Defendant did not present any evidence of his source of income to show that he had the financial capacity to make the monthly payments to the bank and that he indeed made those payments.
- Defendant did not know the exact amount which was owed to the bank when he "bought" the vehicle. As such, Defendant does not know how much was the debt that he assumed when he allegedly bought the vehicle.
- Defendant did not know the exact amount of the monthly installments that he had to make to the bank nor the number of payments he actually did.
- No evidence was presented by Defendant of personal items kept inside the vehicle.

The two (2) traffic tickets Defendant presented which were issued on December 21, 2013 in Vieques, Puerto Rico for violations of the PR Traffic Laws do little to support his assertion of standing and his alleged ownership and control of the vehicle. (Docket No. 100). These two (2) tickets just show that Defendant was the driver of the Chevrolet Equinox at the time the tickets were issued, and nothing else.

Defendant's assertion of standing is totally based on his self-serving testimony which the Court finds is not credible. Evidence of this is the fact that no additional

evidence was adduced in support of Defendant's contention. The fact that there is no evidence whatsoever (documentary or testimonial) to corroborate Defendant's testimony at the hearing as to his alleged ownership and control of the vehicle, makes his testimony suspect and militates heavily against his credibility. Moreover, Defendant's testimony was contradictory in some regards and lacked specificity, as detailed above. This became evident during Defendant's cross-examination.

To accept Defendant's accommodating testimony would entail that the Court would have to believe his testimony in its entirety simply because he testified as such. To have paid $4,000.00 in cash as a down payment for a car that he used daily, in addition to making several additional payments thereafter, and have no documentary or testimonial evidence whatsoever to evince such payments and his use and control of the vehicle, besides his own testimony, is simply incredible. The explanation provided by Defendant that he has been imprisoned for such a long time and has no contact with his family and no access to his documents does not fill this gap. The Court simply cannot take Defendant's testimony face value in this case, under the totality of circumstances, and taking into account Defendant's demeanor on the stand and the non-specific answers he provided. There is nothing other than Defendant's self-serving testimony to support his claim that he has standing to challenge the admissibility of the evidence seized. That is not enough to meet the burden of proof Defendant has in this case. As such, after making an assessment of credibility, the Court finds that Defendant's testimony does not deserve credibility.

Accordingly, the Court cannot find that Defendant Morales was in legal possession and control of the Chevrolet vehicle at the time of his arrest, nor that he was the legal

owner of the same. Moreover, the Court cannot find that Defendant's expectation of confidentiality was justifiable under the attendant circumstances either.

In view of the above, it is recommended to the court to find that Defendant Morales lacks standing to challenge the seizure of the illegal items seized in the Chevrolet Equinox vehicle and evidence derived there from under the totality of the circumstances and the evidence before the Court.

## CONCLUSION

In view of the foregoing, it is recommended that Defendant Morales' "Motion to Suppress" (Docket No. 69) be DENIED for lack of standing.

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

In San Juan, Puerto Rico, this 14th day of March of 2017.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE